IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| DENNIS SITTMAN,<br><br>       Petitioner,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | )<br>)<br>)<br>)<br>)<br>)  Civ. No. 14-00349 ACK-RLP<br>)  (Cr. No. 91-00921 ACK)<br>)<br>)<br>)<br>)<br>) |

## ORDER DENYING PETITIONER'S WRIT OF ERROR CORAM NOBIS

### BACKGROUND

On May 9, 1991, Dennis Sittman was indicted in Cr. No. 91-00921 ACK for the offenses of Felon in Possession of Firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts 1 and 4); Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1) (Counts 2 and 5); and Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (Count 3). (Gov.'s Resp. Ex. 1.) After a jury trial, Sittman was convicted on all five counts. Sittman was convicted of violating 18 U.S.C. § 922(g)(1) because he had received three Wisconsin felony convictions for burglary in 1975, and an additional Wisconsin felony burglary conviction in 1980. On November 3, 1992, the Court sentenced Sittman to 210 months of imprisonment, pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), followed by five years of supervised release. (Id. Ex. 2.) The

1

Court applied the ACCA because of Sittman's prior Wisconsin burglary convictions.

Sittman appealed his conviction and 210-month sentence in Ninth Circuit Case No. 92-10662. Sittman argued that this Court erred by (1) finding that he was not entitled to the defense of necessity and (2) enhancing his sentence under the ACCA because three of his Wisconsin burglary convictions arose out of a single criminal episode and were committed fifteen years before his firearms offenses. U.S. v. Sittman, 996 F.2d 1229 (9th Cir. 1993) (unpublished)(attached as Exhibit 3 to Gov.'s Resp.). The Ninth Circuit rejected Sittman's arguments and affirmed his conviction and sentence. Id.

On May 20, 1994, Sittman filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence. (Gov.'s Resp. Ex. 4.) In his § 2255 motion, Sittman argued, in pertinent part, that he received ineffective assistance of counsel from his then-attorney Wayne Tashima because, inter alia, Mr. Tashima failed to challenge the Government's use of his three Wisconsin burglary convictions as predicate offenses to enhance his sentence under the ACCA. (Id.) Sittman further asserted that he informed Mr. Tashima three times of his belief that his Wisconsin burglary convictions could not be used to enhance his sentence because his civil rights were

restored pursuant to Wisconsin law.[1]

On July 27, 1994, the Court denied Sittman's § 2255 motion. (Id. Ex. 7.) The Court held, in relevant part, that Wisconsin law did not prohibit the use of Sittman's burglary convictions to enhance his sentence under the ACCA and, consequently, Mr. Tashima's conduct was reasonable. (Id.)

On August 12, 1994, Sittman filed a motion for reconsideration of the Court's July 27, 1994 order, which the Court subsequently denied. (Id. Exs. 8 & 9.)

On December 30, 1994, Sittman appealed this Court's denial of his § 2255 motion in Ninth Circuit Case No. 94-16651. (Id. Ex. 10.) Sittman argued that Mr. Tashima was ineffective for failing to challenge the Government's use of his Wisconsin burglary convictions as predicate offenses under the ACCA because Wisconsin law substantially restored his civil rights once he completed his state sentences. (Id.)[2]

On May 19, 1995, the Ninth Circuit affirmed this Court's denial of Sittman's § 2255 motion. Sittman v. U.S., 56 F.3d 73 (9th Cir. 1995) (unpublished)(attached as Exhibit 14 to Gov.'s Resp.). The Ninth Circuit held that Wisconsin law did not

_____

[1]In his first § 2255 motion, Sittman did not move to vacate his conviction under § 922(g)(1) on the grounds that his civil rights were restored pursuant to Wisconsin law. (See Gov.'s Resp. Ex. 4 at 7-11.)

[2]In his appellant brief, Sittman did not seek to vacate his conviction under § 922(g)(1). (See Gov.'s Resp. Ex. 10 at 6-7.)

substantially restore Sittman's civil rights and, as a result, he failed to demonstrate that he was prejudiced by Mr. Tashima's decision not to challenge the Government's use of his Wisconsin burglary convictions as predicate offenses. Id.

On June 26, 1996, Sittman filed a second § 2255 motion. (Gov.'s Resp. Ex. 15.) In that motion, Sittman brought claims of ineffective assistance of counsel at trial and on appeal. (Id.)

On August 6, 1996, the Court dismissed without prejudice Sittman's second § 2255 motion on two grounds. (Id. Ex. 16.) First, the Court held that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibited Sittman from filing a second § 2255 motion without obtaining permission from the Ninth Circuit to file that motion in district court. (Id.) Second, the Court held that Sittman's second § 2255 motion was barred by the AEDPA's statute of limitations. (Id.)

Sittman appealed the dismissal of his second § 2255 motion in Ninth Circuit Case No. 97-16781. On February 13, 1998, the Ninth Circuit dismissed Sittman's appeal for lack of jurisdiction because his request for a certificate of appealability and notice of appeal were untimely. (Id. Ex. 17.)

Sittman filed a motion for reconsideration of the Ninth Circuit's February 13, 1998 order, which the Ninth Circuit denied. (Id. Exs. 18 & 19.) Sittman then filed a petition for writ of certiorari with the U.S. Supreme Court, which the Supreme

Court denied. <u>Sittman v. U.S.</u>, 525 U.S. 854 (1998) (attached as Exhibit 20 to Gov.'s Resp.).

On October 30, 1998, Sittman filed a motion for relief of judgment pursuant to Federal Rule of Civil Procedure 60(b). (Gov.'s Resp. Ex. 21.) In that motion, Sittman argued that the Court should reconsider its decision to dismiss Sittman's second § 2255 motion. (<u>Id.</u>)

On December 22, 1998, the Court denied Sittman's Rule 60(b) motion as untimely. (<u>Id.</u> Ex. 22.) The Court further held that, even if the Rule 60(b) motion was timely, it would affirm its prior dismissal of Sittman's second § 2255 motion. (<u>Id.</u>)

Sittman appealed this Court's denial of his Rule 60(b) motion in Ninth Circuit Case No. 99-15450. The Government moved to dismiss Sittman's appeal for lack of jurisdiction. On July 17, 1999, the Ninth Circuit construed the Government's motion as a motion for summary disposition of the appeal and, so construed, granted the Government's motion and affirmed this Court's judgment. (<u>Id.</u> Ex. 23.)

On August 1, 2006, Sittman began serving his term of supervised release in Cr. No. 91-00921 ACK. On October 23, 2013, Sittman completed his term of supervised release. (Hino Decl. ¶ 4.)[3]

---

[3]On February 13, 2013, and before he completed his term of supervised release in Cr. No. 91-00921 ACK, Sittman pled guilty
(continued...)

On August 1, 2014, Sittman filed the instant Petition
for Writ of Error Coram Nobis with this Court pursuant to the All
Writs Act, 28 U.S.C. § 1651. (Doc. No. 1.)[4/] Sittman argues that
the Court should vacate his conviction under 18 U.S.C. §
922(g)(1) and sentence enhancement under 18 U.S.C. § 924(e)
because his civil rights were restored within the meaning of 18
U.S.C. § 921(a)(20). (Pet. at 6.) Sittman contends that his civil
rights were restored pursuant to a discharge certificate
allegedly issued to him by the Wisconsin Department of
Corrections ("DOC") in 1984. (See id. at 5.) Sittman further
contends that he received ineffective assistance of counsel
because his attorney failed to investigate the Wisconsin DOC's
discharge policy for inmates during the relevant time period.
(Id.)

On September 11, 2014, the Government filed a Response.
(Doc. No. 9.) The Government argues that the Petition should be

---

[3](...continued)
before a magistrate judge in 3:12cr7086 (S.D. Cal.) to the
offenses of Conspiracy to Distribute Methamphetamine, 21 U.S.C.
§§ 846 & 841(a)(1), and Conspiracy to Launder Money, 18 U.S.C. §§
1956(a)(1)(i) & 1956(a)(1)(B)(i). On January 31, 2014, Sittman was
sentenced in 3:12cr7086 (S.D. Cal.) to 51 months imprisonment and
three years of supervised release.

[4/]Remarkably, Sittman filed the instant Petition on August
1, 2014, more than half a year after he was sentenced to 51
months imprisonment in 3:12cr7086 (S.D. Cal.). In any event,
Sittman states that he is seeking coram nobis relief because his
conviction and sentence in Cr. No. 91-00921 ACK could have
"adverse consequences for any future trial or sentenc[ing]."
(Pet. at 6.)

denied because Sittman "has already litigated the issue he is raising in his coram nobis petition." (Gov.'s Resp. at 13.) The Government further argues that Sittman has failed to meet his burden of showing that a valid reason exists for not presenting evidence of his alleged Wisconsin discharge certificate earlier in these proceedings. (Id. at 16-18.) Finally, the Government asserts that the equitable doctrine of laches bars Sittman from seeking coram nobis relief. (Id. at 1.)

On October 6, 2014, Sittman filed a "Rebuttal to Government's Response to Petitioner's Writ of Coram Nobis." (Doc. No. 11.)

The Court finds that no hearing is warranted in this matter because the motions, files, and records of the case conclusively show that Sittman is not entitled to coram nobis relief. U.S. v. Taylor, 648 F.2d 565, 573 (9th Cir. 1981) (where motions, files and records of the case conclusively show that petitioner is entitled to no relief, no hearing is required on petition for writ of error coram nobis); see also D. Haw. Local Rule 7.2(d) ("Unless specifically required, the court, in its discretion, may decide all matters, including motions, petitions, and appeals, without a hearing.").

**STANDARD**

The writ of error coram nobis provides "a remedy to

attack a conviction when the petitioner has served his sentence and is no longer in custody." Estate of McKinney By & Through McKinney v. U.S., 71 F.3d 779, 781 (9th Cir. 1995). Specifically, the writ "provides a remedy for those suffering from the 'lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and 'egregious legal errors.'" Id. (quoting U.S. v. Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989)).

"Both the Supreme Court and [the Ninth Circuit] have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." U.S. v. Riedl, 496 F.3d 1003, 1005 (9th Cir. 2007); see also Carlisle v. U.S., 517 U.S. 416, 429 (1996) ("[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate.") and U.S. v. Morgan, 346 U.S. 502, 511 (1954) (characterizing the writ as an "extraordinary remedy" that should be granted "only under circumstances compelling such action to achieve justice").

To receive coram nobis relief, a petitioner must demonstrate four factors: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the

conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." Riedl, 496 F.3d at 1006 (quoting Hirabayashi v. U.S., 828 F.2d 591, 604 (9th Cir. 1987)). "Because these requirements are conjunctive, failure to meet any one of them is fatal." Matus-Leva v. U.S., 287 F.3d 758, 760 (9th Cir. 2002).

## DISCUSSION

18 U.S.C. § 922(g)(1) makes it "unlawful for any person who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year to . . . possess . . . any firearm or ammunition."

> What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). Accordingly, if a person's civil rights have been restored, his felony conviction cannot serve as a predicate conviction for a violation of § 922(g)(1) "unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."

Sittman was sentenced pursuant to 18 U.S.C. § 924(e)(1), which provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any courts referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1). For § 924(e) to apply, the person's conviction must be of the type specified in § 922(g)(1), which, as stated above, refers to § 921(a)(20). Thus, § 924(e) incorporates the definition of "crime punishable by imprisonment for a term exceeding one year," contained in § 921(a)(20), and its exclusion of any conviction for which the person's civil rights have been restored.

Sittman argues that his Wisconsin burglary convictions are not "convictions" within the meaning of § 921(a)(20) because, upon completion of his state sentences in 1984, he received a discharge certificate from the Wisconsin DOC restoring his civil rights without any reservations or prohibitions limiting his right to own or possess firearms. (Pet. at 3.) Sittman asserts that, as a result, his conviction under § 922(g)(1) and sentence enhancement under § 924(e)(1) should be vacated. (Id. at 5.)

Sittman has not provided the Court with a copy of the alleged discharge certificate. Instead, Sittman relies on the

affidavit in <u>Hill v. U.S.</u>, 118 F.Supp.2d 910, 915 (E.D. Wis. 2000), to establish that he received such a certificate. The <u>Hill</u> court described the contents of that affidavit:

> . . . Walter Dickey, Secretary of the Wisconsin Department of Corrections between 1983 and 1987 and a participant in the drafting of DOC's administrative rules . . . expresses personal knowledge "of the practices, procedures, law and regulations pertaining to the discharge of inmates from the Wisconsin Department of Corrections." Dickey Aff. ¶ 3. He adds: "Based on the law in effect at that time, and the policies of Wisconsin Department of Corrections, . . . I am of the opinion that Mr. Hill was issued a discharge certificate in 1982, as all inmates who finished parole were issued discharge certificates as required by law." <u>Id.</u> ¶ 5. Dickey further states "[s]uch discharge contained language to the effect that 'Any civil rights lost as [a] result of such judgments of conviction are restored by virtue of this discharge, under the provisions of Section 57.078 of the Statutes of the State of Wisconsin,' " <u>id.</u> ¶ 6, and that "such discharge would not contain any express reservation regarding the right to own or possess a firearm." <u>Id.</u> ¶ 7.

<u>Hill</u>, 118 F.Supp.2d at 915. In addition to the Dickey affidavit, Sittman relies on the sample discharge certificates submitted by the petitioner in <u>Hill</u>. Those certificates were issued to inmates who completed their sentences at roughly the same time as the <u>Hill</u> petitioner, "reflect[ed] the restoration of rights language

quoted in Dickey's affidavit and contain[ed] no firearms reservation." Id.[5/]

In its Response, the Government argues that Sittman "has already litigated the issue he is raising in his coram nobis petition." (Gov.'s Resp. at 13.) This Court has previously explained that

> [c]oram nobis relief "is not available to litigate issues already litigated." Klein v. U.S., 880 F.2d 250, 254 n. 1 (10th Cir. 1989); see also U.S. v. Montalvo, 995 F.2d 234, 1993 WL 181381 (9th Cir. May 27, 1993) (unpublished). Rather, "it is reserved for claims which have yet to receive their first disposition[.]" Id.

Martinez v. U.S., 90 F.Supp.2d 1072, 1075 (D. Haw. 2000) aff'd, 17 Fed. Appx. 517 (9th Cir. 2001); see also U.S. v. Riedl, Cr. No. 98-00624 ACK, 2006 WL 1119162, at *3 (D. Haw. Apr. 24, 2006) aff'd, 496 F.3d 1003 (9th Cir. 2007) (noting that courts have

---

[5/]As noted, Sittman relies entirely on the evidence submitted by the petitioner in Hill to establish that he received a discharge certificate from the Wisconsin DOC restoring his civil rights. However, Sittman does not discuss the Seventh Circuit's decision in U.S. v. Vitrano, 405 F.3d 506 (7th Cir. 2005). There, the petitioner was discharged from a Wisconsin state prison in 1983 (a year before Sittman). Id. at 508. The petitioner asserted that he received a discharge order restoring his civil rights. Id. The petitioner did not produce a copy of his discharge order, but rather relied upon the sample discharge orders of other inmates. Id. In response, the government produced five types of discharge orders, only one of which contained language providing that "[a]ny civil rights lost as a result of such judgments of conviction are restored by virtue of this discharge." Id. The Seventh Circuit ultimately ruled that the petitioner could not "show by a preponderance of evidence that he received a discharge certificate whose language might be read reasonably to restore all of his civil rights[.]" Id. at 510.

denied coram nobis relief "where the petitioner appears to be abusing the writ by attempting to re-litigate claims") (quotation marks omitted) (citing U.S. v. Kwan, 407 F.3d 1005, 1013 (9th Cir. 2005), abrogated on other grounds by Padilla v. Kentucky, 559 U.S. 356 (2010)).

The Court agrees with the Government that Sittman is attempting to re-litigate issues he has previously raised before this Court and the Ninth Circuit.

As discussed, Sittman argued in his first § 2255 motion that his Wisconsin burglary convictions could not be used to enhance his sentence because his civil rights were restored pursuant to § 921(a)(20) and that his counsel was ineffective for failing to raise this defense. (Gov.'s Resp. Ex. 4 at 7.) After extensive briefing by both parties, this Court held that Sittman's Wisconsin burglary convictions were properly used to enhance his sentence under the ACCA and, therefore, his counsel was not ineffective. (Id. Ex. 7 at 3-4 & 6) (citing Roehl v. U.S., 977 F.2d 375, 377 (7th Cir. 1992) (ruling that Wis. Stat. § 57.078 does not wipe convictions from an individual's record once the person has satisfied his sentence); U.S. v. Ziegenhagen, 776 F.Supp. 441, 449 (W.D. Wis. 1991) (Wisconsin law deems defendant to be a convicted person for the purpose of acquiring and possessing a gun).) After this Court denied his motion for reconsideration, Sittman filed an appeal with the Ninth Circuit.

(<u>Id.</u> Exs. 9 & 10.) The Ninth Circuit affirmed this Court's holding, and determined that Sittman's civil rights were not substantially restored under Wisconsin law and, consequently, he did not receive ineffective assistance of counsel. (<u>Id.</u> Ex. 14.)

In the instant Petition, Sittman is raising essentially the same issues previously ruled upon by this Court and the Ninth Circuit: (1) whether his civil rights were restored within the meaning of § 921(a)(20), and (2) whether his counsel was ineffective for not raising this defense. As this Court has twice held, coram nobis relief is not available to re-litigate issues. <u>See</u> <u>Martinez</u>, 90 F.Supp.2d at 1075; <u>and</u> <u>Riedl</u>, 2006 WL 1119162, at *3.

Sittman argues that his Petition raises issues not previously considered: (1) whether his civil rights were restored pursuant to a discharge certificate purportedly issued to him by the Wisconsin DOC, and (2) whether his counsel was ineffective for failing to research the Wisconsin DOC's discharge policy as to inmates who completed their sentences at the same time as Sittman. The Court is not persuaded by Sittman's argument.

In his post-conviction motions, Sittman asserted that his civil rights were restored pursuant to Wis. Stat. § 57.078.

(See, e.g., Gov.'s Resp. Ex. 4 at 10.) That statute provided at
the time[6]:

> [e]very person who is convicted of crime
> obtains a restoration of his civil rights by
> serving out his term of imprisonment or
> otherwise satisfying his sentence. <u>The
> certificate of the department or other
> responsible supervising agency that a
> convicted person has served his sentence or
> otherwise satisfied the judgment against him
> is evidence of that fact and that he is
> restored to his civil rights</u>[.]

Wis. Stat. § 57.078 (1979) (emphasis added). In effect, Sittman

raised the issue as to whether a Wisconsin discharge certificate

could restore his civil rights and provided a basis for

challenging the Government's use of his burglary convictions as

predicate offenses under §§ 922(g)(1) and 924(e)(1). Indeed, in

<u>Hill</u>, the case upon which Sittman's Petition relies extensively

upon, the Dickey affidavit indicated that the petitioner was

issued a discharge certificate pursuant to Wis. Stat. § 57.078:

> . . . "<u>Based on the law in effect at that
> time</u>, and the policies of Wisconsin
> Department of Corrections, . . . I am of the
> opinion that Mr. Hill was issued a discharge
> certificate in 1982, as all inmates who
> finished parole were issued discharge
> certificates as required by law." <u>Id.</u> ¶ 5. .
> . . [S]uch discharge contained language to
> the effect that 'Any civil rights lost as [a]
> result of such judgments of conviction are
> restored by virtue of this discharge, <u>under
> the provisions of Section 57.078 of the
> Statutes of the State of Wisconsin</u>,' " <u>id.</u> ¶
> 6, and that "such discharge would not contain

---

[6]Wis. Stat. § 57.078 has since been repealed.

> any express reservation regarding the right
> to own or possess a firearm." <u>Id.</u> ¶ 7.

<u>Hill</u>, 118 F.Supp.2d at 915 (emphasis added).

Moreover, even assuming Sittman is correct in his assertion that the Petition raises issues not previously considered, the Court nevertheless concludes that Sittman is precluded from obtaining coram nobis relief because he has not satisfied the second element of the four-part test set forth in <u>Riedl</u>. That is, Sittman has failed to meet his burden of establishing that valid reasons exist for not challenging his conviction or sentence earlier on the grounds mentioned herein.

Sittman had numerous opportunities to raise his claims that his discharge certificate restored his civil rights and that his counsel was ineffective for failing to investigate the Wisconsin DOC's discharge policy. Specifically, Sittman could have asserted these claims at trial, on direct appeal, or through his various post-conviction motions, motions for reconsideration and appeals thereof. As discussed below, Sittman has not provided the Court with a valid reason for his delay in asserting these claims.

Both the Ninth Circuit and this Court, consistent with the extraordinary nature of coram nobis relief, have denied coram nobis petitions where the petitioners could have presented their claims to a federal forum and where the petitioners provided no valid reasons for the delay. <u>See</u> <u>Riedl</u>, 496 F.3d at 1006

(affirming this Court's denial of coram nobis petition because none of petitioner's proffered reasons for delay "explain[ed] why she did not raise her void-for-vagueness or insufficient evidence claims during trial, on direct appeal or through a 28 U.S.C. § 2255 motion"); <u>Maghe v. U.S.</u>, 710 F.2d 503, 503-04 (9th Cir. 1983) (denying coram nobis petition as untimely where claim could have been raised earlier and there were no sound reasons for delay); <u>and Martinez</u>, 90 F.Supp.2d at 1075 (denying coram nobis petition because "[p]etitioner clearly had 'a fair opportunity' to present his federal claims to a federal forum" and supplied no valid reason for delay) (quoting <u>U.S. v. Johnson</u>, 988 F.2d 941, 945 (9th Cir. 1993)); <u>cf. Riedl</u>, 2006 WL 1119162, at *4 (finding that claims that could have been raised by direct appeal are outside the scope of the writ) (citing federal circuit cases).

Sittman appears to argue that he was first made aware that he received a discharge certificate from the Wisconsin DOC and that this certificate was sufficient to restore his civil rights within the meaning of § 921(a)(20) after <u>Hill</u> was issued in 2000. (<u>See</u> Pet. at 6.)[7] According to Sittman, he was unable

---

[7]Sittman also appears to argue that he was diligent in asserting the claims at issue in the instant Petition because he filed the Petition within nine months after the completion of his sentence in Cr. No. 91-00921 ACK. <u>See</u> <u>Estate of McKinney</u>, 71 F.3d at 781 (holding that a petitioner may file a writ of error coram nobis when he has served his sentence and is no longer in custody). Even assuming that he was diligent in filing his Petition, Sittman, as discussed in this Order, has not provided a valid reason as to why he did not attack his conviction or
(continued...)

17

to file an additional collateral attack on his conviction or
sentence after <u>Hill</u> due to the AEDPA. (<u>Id.</u>)

The AEDPA allows a defendant to file a successive §
2255 motion only if that motion is "certified . . . by a panel of
the appropriate court of appeals to contain" either "(1) newly
discovered evidence that, if proven and viewed in light of the
evidence as a whole, would be sufficient to establish by clear
and convincing evidence that no reasonable factfinder would have
found the movant guilty of the offense," or "(2) a new rule of
constitutional law, made retroactive to cases on collateral
review by the Supreme Court, that was previously unavailable." 28
U.S.C. § 2255(h). As the Government points out, Sittman could
have sought certification from the Ninth Circuit to file an
additional § 2255 motion after the <u>Hill</u> decision was issued.
Instead, Sittman waited fourteen years to file the instant
Petition. The Ninth Circuit has made clear that a coram nobis
petition cannot be used to "circumvent procedural bars." <u>Kwan</u>,
407 F.3d at 1013.

While this Court recognizes that the AEDPA contains a
one-year limitation period, the AEDPA permits the one year period

---

[7](...continued)
sentence enhancement <u>prior</u> to the filing of the Petition, on the
basis that he received a discharge certificate restoring his
civil rights. <u>See</u>, <u>e.g.</u>, <u>Riedl</u>, 496 F.3d at 1006 (denying coram
nobis petition because petitioner failed to provide sound reasons
for not raising claims prior to her filing a writ of error coram
nobis).

to begin to run from the date upon which the factual predicate for the petitioner's claims "could have been discovered through the exercise of due diligence." See 28 U.S.C. § 2255(f)(4). Thus, assuming he could prove that § 2255(f)(4) applied, Sittman could have sought permission from the Ninth Circuit to file an additional § 2255 motion attacking his conviction and sentence on the grounds that he received a discharge certificate restoring his civil rights, and submitted that motion within a year after Hill was decided.

As a final matter, the Court notes that the Ninth Circuit has "considered delay [in filing a coram nobis petition] to be reasonable when the applicable law was recently changed and made retroactive." Riedl, 496 F.3d at 1007 (citing Walgren, 885 F.2d at 1421). Such a circumstance is not present in this case because the relevant Ninth Circuit law has remained the same throughout the vast majority period of this litigation. That is, the Ninth Circuit, beginning with its 1995 decision in Herron and continuing to its 2001 decisions in Laskie and Gallaher (which have not been overruled), has consistently held that an individual's felony state conviction cannot constitute a predicate offense under §§ 922(g)(1) and 924(e)(1) if that individual received a discharge certificate restoring his civil rights without any express prohibition on the possession of firearms. See U.S. v. Herron, 45 F.3d 340, 341-43 (9th Cir. 1995) (holding that appellant's prior state conviction could not be

19

considered a predicate offense because he received a discharge
certificate from the State of Washington restoring his civil
rights and containing no limitation on appellant's right to
possess firearms); <u>U.S. v. Laskie</u>, 258 F.3d 1047, 1050-53 (9th
Cir. 2001) (finding that appellant's honorable discharge
releasing him "from all penalties and disabilities" resulting
from his felony conviction "set-aside" his prior conviction and,
consequently, this conviction could not serve as a predicate
offense under § 922(g)(1); <u>and</u> <u>U.S. v. Gallaher</u>, 275 F.3d 784,
789-93 (9th Cir. 2001) (concluding that appellant's discharge
certificate restored his civil rights and contained no express
prohibition regarding the possession of firearms and thus his
felony convictions were not "convictions" for purposes of the
ACCA).

        In sum, coram nobis relief is inappropriate in this
case because Sittman is attempting "to litigate issues already
litigated." <u>Martinez</u>, 90 F.Supp.2d at 1075. Furthermore, even
assuming that the issues presented by the instant Petition have
not been previously litigated, Sittman fails to satisfy the
second requirement of coram nobis relief by demonstrating that
valid reasons exist for not having attacking his conviction or
sentence earlier on the grounds that he received a discharge
certificate from the Wisconsin DOC restoring his civil rights,
and that he received ineffective assistance of counsel because
his attorney did not investigate the Wisconsin DOC's discharge

policy during the relevant time period.[8] All four requirements must be met in order for Sittman to obtain coram nobis relief. See <u>Matus-Leva v. U.S.</u>, 287 F.3d at 760. Accordingly, the Court denies Sittman's Petition for a Writ of Error Coram Nobis.[9]

## CONCLUSION

For the foregoing reasons, the Court DENIES Petitioner's Writ of Error Coram Nobis.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, October 20, 2014.



_____
Alan C. Kay
Senior United States District Judge

<u>Sittman v. U.S.</u>, Civ. No. 14-00349 ACK-RLP (Cr. No. 91-00921 ACK): ORDER DENYING PETITIONER'S WRIT OF ERROR CORAM NOBIS

---

[8]Because Sittman has not met the second requirement to qualify for coram nobis relief, the Court will not address whether he has satisfied the remaining requirements. <u>See</u> <u>Matus-Leva</u>, 287 F.3d at 760 (holding that all four elements must be satisfied in order for petitioner to obtain coram nobis relief).

[9]Because Sittman cannot obtain coram nobis relief due to his failure to satisfy the second element of <u>Riedl</u>'s four-part test, the Court will not address whether the equitable doctrine of laches bars Sittman from seeking coram nobis relief. <u>See</u> <u>Riedl</u>, 496 F.3d at 1009 ("It is irrelevant that the government has not established prejudice as to [petitioner's] void-for-vagueness claim because the doctrine of laches only becomes applicable once a petitioner has satisfied the second coram nobis requirement, which [petitioner] has not.").