IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

_____

DENNIS J. SITTMAN,                    )
                                      )
                                      )
              Petitioner,             )
                                      )  Civ. No. 19-00687 ACK-KJM
     vs.                              )  Cr. No. 91-00921 ACK
                                      )
UNITED STATES OF AMERICA,             )
                                      )
              Respondent.             )
_____)

## ORDER DENYING PETITIONER'S WRIT OF ERROR
## CORAM NOBIS AND/OR AUDITA QUERELA

        This case stems from a 1992 conviction in Criminal

Case No. 91-00927-ACK, for which Petitioner Dennis J. Sittman

("Sittman") was sentenced to and served 210 months of

imprisonment, followed by five years of supervised release.

After losing his direct appeal, Sittman filed a series of

collateral attacks on his conviction and sentence.  The most

recent challenge at issue now is styled as a Petition for Writ

of Error Coram Nobis and/or Audita Querela.  See ECF No. 200

(the "Petition").

        The Court finds that no hearing is warranted in this

matter because, as discussed below, the motions, files, and

records of the case conclusively show that Sittman is not

entitled to coram nobis or audita querela relief.  See United

States v. Taylor, 648 F.2d 565, 573 (9th Cir. 1981); see also D.

Haw. Local Rule 7.1(c) ("Unless specifically required, the

1

court, in its discretion, may decide all matters, including motions, petitions, and appeals, without a hearing.").

**BACKGROUND**

This case has a long and complex procedural history dating back almost thirty years, which the Court has detailed in prior orders. See, e.g., Sittman v. United States, Civ. No. 14-00349 ACK-RLP, Cr. No. 91-00921 ACK, 2014 WL 5361324, at *1-3 (D. Haw. Oct. 20, 2014); see also Govt's Resp. Br., ECF No. 208, at 2-7. The Court incorporates by reference that prior procedural history and provides here an overview of only the pertinent events.

## I.   1992 Conviction and Sentencing

On May 9, 1991, Dennis Sittman was indicted in Cr. No. 91-00921 ACK for the offenses of Felon in Possession of Firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts 1 and 4); Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1) (Counts 2 and 5); and Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (Count 3). Govt's Resp. Br., Ex. 1. After a jury trial, Sittman was convicted on all five counts (the "1992 Conviction"). See id., Ex. 4. Sittman was sentenced to 210 months of imprisonment followed by five years of supervised release. Id. The Court applied the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), to enhance Sittman's sentence based on four prior

2

Wisconsin convictions for burglary.  See id., Ex. 2 at pp. 10-12 of 23.

## II.  Direct Appeal of & Collateral Attacks on 1992 Conviction

Sittman appealed his 1992 Conviction and 210-month sentence to the Ninth Circuit in 1993.  Sittman argued that the Court erred by enhancing his sentence under the ACCA because three of his Wisconsin burglary convictions arose out of a single criminal episode and were committed fifteen years before his firearms offenses.  See United States v. Sittman, 996 F.2d 1229 (9th Cir. 1993) (unpublished).[1]

The Ninth Circuit rejected Sittman's arguments and affirmed his conviction and sentence.  See id.  Over the next several years, Sittman filed a series of collateral attacks on the 1992 Conviction and sentence under 28 U.S.C. § 2255.  See Govt's Resp. Br. at 3-6; see also Sittman, 2014 WL 5361324 at *1-3 (laying out procedural history of various § 2255 motions).  Sittman's § 2255 motions were denied, and those denials were upheld by the Ninth Circuit.  Sittman, 2014 WL 5361324 at *1-3.

Sittman began serving his term of supervised release related to the 1992 Conviction on August 1, 2006, and he completed his term on October 23, 2013.  Sittman, 2014 WL 5361324 at *2.

_____

[1] Under Ninth Circuit Rule 36-3(c), an unpublished order issued before January 1, 2007, may be cited if it is "relevant under the doctrine of law of the case . . . ."

In August 2014, after he had completed his sentence and supervised release, Sittman filed a petition for writ of error coram nobis arguing that the Court should vacate his 1992 Conviction and sentence because "his civil rights were restored pursuant to a discharge certificate allegedly issued to him by the Wisconsin Department of Corrections . . . in 1984." Id. He also alleged that he had received ineffective assistance of counsel based on his attorney's failure to investigate the discharge policy. Id. This Court held that Sittman was not entitled to coram nobis relief because (1) he was "attempting to re-litigate issues he ha[d] previously raised before this Court and the Ninth Circuit," and (2) in any event, he was precluded from obtaining coram nobis relief because he "failed to meet his burden of establishing that valid reasons exist[ed] for not challenging his conviction or sentence earlier." Id. at *5-6.

Almost five years later, in June 2019, Sittman filed another § 2255 motion seeking to vacate, set aside, or correct his conviction and sentence. ECF No. 196. This time, he based his motion on "new law"—United States Supreme Court case Johnson v. United States, 135 S. Ct. 2551 (2015). Because it was successive to two prior § 2255 motions, this Court referred the motion to the Ninth Circuit, ECF No. 198, which then denied the motion because Sittman was no longer "in custody" for the 1992 Conviction, see Case No. 19-71541 (9th Cir.).

### III. 2012 Conviction and Sentencing

Meanwhile, in 2012 while still on supervised release for the 1992 Conviction, Sittman pled guilty in the Southern District of California to entirely separate charges for drugs and money-laundering (the "2012 Case"). See United States v. Hodges, et al., Cr. No. 12-01111-5 (S.D. Cal.). He was placed in a Criminal History Category III based on five criminal points: three points based on his 1992 Conviction and two points based on his having committed the offense in the 2012 Case while he was on supervised release related to the 1992 Conviction. See Govt's Resp. Br., Ex. 7 ¶¶ 42-44. Accordingly, Sittman was sentenced to 51 months of imprisonment as to each of the two counts, to be served concurrently followed by three years of supervised release. Govt's Resp. Br. at 8 (citing Hodges, Cr. No. 12-01111-5, Dkt. No. 288).

After Sittman commenced his first term of supervised release, jurisdiction of the case was transferred to the District of Hawai`i and assigned to Judge Kobayashi, Cr. No. 16-00471. See id. Sittman's supervised release in the 2012 Case was revoked for several drug-related violations and he was sentenced to nine months imprisonment followed by twelve months of supervised release. Id.

On July 16, 2018, Sittman's second term of supervised release stemming from the 2012 Case commenced and, nine months

later, his supervised release was again revoked based on seven admitted violations, primarily drug-related. Id. at 8-9; see also Govt's Resp. Br., Ex. 8 (transcript of hearing). Judge Kobayashi sentenced Sittman to eleven months as to each count, to be served consecutively, with no supervised release to follow. Gov't Resp. Br. at 9; see also id., Ex. 6. Sittman is currently incarcerated serving this sentence based on his violation of supervised release imposed in the underlying 2012 Case. Id.; see also Petition at 1 of 3.

## IV. The Present Petition

On August 14, 2019, Sittman filed the instant Petition for Writ of Error Coram Nobis and/or Audita Querela pursuant to the All Writs Act, 28 U.S.C. § 1651. ECF No. 200. Sittman argues that the Court should vacate his conviction and sentence enhancement on the 1992 Conviction—for which Sittman has already completed his sentence—because subsequent Supreme Court case law invalidates his prior designation as an Armed Career Criminal under ACCA. Petition at p. 1 of 3. Sittman argues that his 1992 sentence under ACCA was an aggravating factor in his revocation sentence in the later 2012 Case before Judge Kobayashi, Cr. No. 16-00471 LEK. See id. at p. 3 of 3. Sittman asserts that, in the "interest of justice," he is entitled to resentencing for the 1992 Conviction and that the "bank time" he would accrue from that resentencing requires that he be

immediately released on his current probation violation related to the separate 2012 Case.

After Sittman filed his Petition, the Court directed the Government to file a response. ECF No. 203. The Government sought an extension to file its brief on December 6, 2019, ECF No. 204, which the Court granted for good cause, ECF No. 205. Two weeks later, Sittman filed what he labels a "petition for immediate relief and objection to request for extension of time," ECF No. 206, as well as an addendum to his coram nobis Petition, ECF No. 207. The Government filed its response on December 6, 2019, ECF No. 208, and Sittman timely filed a reply on December 20, 2019, ECF No. 210.

## STANDARD

The writ of error coram nobis provides "a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." Estate of McKinney By & Through McKinney v. United States, 71 F.3d 779, 781 (9th Cir. 1995). Specifically, the writ "provides a remedy for those suffering from the 'lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact' and 'egregious legal errors.'" Id. (quoting United States v. Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989)).

"Both the Supreme Court and [the Ninth Circuit] have long made clear that the writ of error coram nobis is a highly

unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." United States v. Riedl, 496 F.3d 1003, 1005 (9th Cir. 2007); see also Carlisle v. U.S., 517 U.S. 416, 429, 116 S. Ct. 1460, 1468 (1996) ("[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." (quoting United States v. Smith, 331 U.S. 469, 475 n.4, 67 S. Ct. 1330, 1334 n.4 (1947)) (second alteration in Carlisle)); United States v. Morgan, 346 U.S. 502, 511, 74 S. Ct. 247, 252 (1954) (characterizing the writ as an "extraordinary remedy" that should be granted "only under circumstances compelling such action to achieve justice").

    To receive coram nobis relief, a petitioner must demonstrate four factors:  "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character."  Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987).  "Because these requirements are conjunctive, failure to meet any one of them is fatal."  Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002).

A writ of audita querela is a "writ of last of last resort only available, if at all, when all other post-conviction remedies have been exhausted." <u>Shin v. United States</u>, Cr. No. 04-00150 SOM, 2017 WL 2802866, at *20 (D. Haw. June 28, 2017). "A person seeking a writ of audita querela must show . . . a 'legal defect' in the underlying sentence or conviction." <u>United States v. Hovsepian</u>, 359 F.3d 1144, 1154 (9th Cir. 2004) (internal citation and quotation marks omitted). According to the Ninth Circuit,

> [c]ourts have noted that the difference between <u>coram nobis</u> and <u>audita querela</u> is one of timing, not substance. <u>Coram nobis</u> was used to attack a judgment that was infirm at the time it was rendered for reasons that later came to light. <u>Audita querela</u> was used to attack a judgment that was correct when rendered but later was rendered infirm by matters arising after its rendition.

<u>Doe v. I.N.S.</u>, 120 F.3d 200, 203 n.4 (9th Cir. 1997). Many courts have also "questioned, without deciding, whether <u>audita querela</u> survives at all" with § 2255 and coram nobis available to challenge a conviction. <u>Id.</u> at 204 n.5.

### DISCUSSION

Applying the second <u>Hirabayashi</u> factor, the Court holds that Sittman has failed to offer valid reasons for not attacking his conviction earlier. Even if Sittman had offered an acceptable explanation for the delay, Sittman has not met his

burden of identifying ongoing "collateral consequences"
sufficient to establish an Article III justiciable case or
controversy.

## I.   Untimeliness

Sittman is precluded from obtaining coram nobis relief
because he has not satisfied the second element of the four-part
test set forth in Hirabayashi.   That is, Sittman has failed to
meet his burden of establishing that valid reasons exist for not
challenging his 1992 Conviction or sentence earlier.

Both the Ninth Circuit and this Court, consistent with
the extraordinary nature of coram nobis relief, have denied
coram nobis petitions where the petitioners could have presented
their claims to a federal forum and where the petitioners
provided no valid reasons for the delay.   See, e.g., Riedl, 496
F.3d at 1006 (affirming this Court's denial of coram nobis
petition because none of petitioner's proffered reasons for
delay explained why she did not raise her claims during trial,
on direct appeal, or through a § 2255 motion); Maghe v. United
States, 710 F.2d 503, 503-04 (9th Cir. 1983) (denying coram
nobis petition as untimely where claim could have been raised
earlier and there were no sound reasons for delay); see also
Sittman, 2014 WL 5361324 at *6-7 (denying Sittman's prior coram
nobis petition as untimely).

Sittman's coram nobis Petition hinges on a set of Supreme Court decisions issued many years after his 1992 Conviction and after he had completed his sentence on the 1992 Conviction. Sittman argues that Johnson and Welch—issued in June 2015 and April 2016 respectively—together interpret the ACCA to retroactively eliminate Sittman's status as an Armed Career Criminal. Petition at 1 of 3; see also Welch v. United States, 136 S. Ct. 1257 (2016); Johnson, 135 S. Ct. 2551. He asserts that he is thus entitled to resentencing on the 1992 Conviction, which designated him as such. Petition at 1-2 of 3.

The Court need not decide whether Sittman's sentence for the 1992 Conviction would or would not be subject to ACCA enhancement under Johnson and Welch. As stated, those decisions were issued in 2015 and 2016. Yet Sittman's first time challenging his sentence based on these cases was in June 2019, three and four years after they were decided. This first challenge was in the form of a § 2255 motion. See ECF No. 196. That motion was dismissed by the Ninth Circuit on procedural grounds, but notably it would have been time-barred as well. The limitations period for a § 2255 motion begins to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Thus, if Sittman

were still in custody and the Court had considered his challenge under the § 2255 scheme, he would have had only one year from the date Johnson and Welch were decided to assert the rights recognized therein.

The Petition now before the Court is Sittman's second challenge based on Johnson and Welch; it seeks coram nobis relief, not relief under § 2255. Though the Government recognizes this, it points to the one-year limitation period under § 2255 as a framework or guide for the general scheme of relief sought here. See Govt's Resp. Br. at 12. Sittman's position, on the other hand, is simply that no statute of limitations applies to coram nobis relief and therefore such relief is permissible "without limitation of time." Petition at 2 of 3.

Sittman is right that there is no specific limitations period for coram nobis relief like the one that applies to relief under § 2255. Yet his position fails to account for the second Hirabayashi factor, which requires a petitioner to show that valid reasons exist for not having attacked his conviction or sentence earlier. See United States v. Kwan, 407 F.3d 1005, 1012 (9th Cir. 2005) (explaining that while there is no formal statute of limitations, "courts have required coram nobis petitioners to provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier"),

abrogated on other grounds by Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473 (2010).

Here, Sittman provides no explanation as to why he did not raise the arguments raised now closer in time to the issuance of the two Supreme Court decisions. The only explanation is offered in his Reply, in which he notes that "on average court decisions are placed on prison computers 6 to 8 weeks after they are decided" and claims that he sought relief "upon hearing of Johnson." See Sittman's Reply, ECF No. 210.

Even accepting Sittman's unsupported assertion about the timeline for a prison's receipt of judicial opinions, he would have learned of Johnson around August (instead of June) 2015 and of Welch around June (instead of April) 2016. Those few weeks make no difference when, either way, Sittman waited several years to bring his challenge. While the law does not require Sittman to have challenged his sentence at the earliest opportunity, it does require that he have sound reasons for having not done so. Sittman has offered no such reasons and thus has not satisfied a prerequisite to coram nobis relief. Cf. Riedl, 496 F.3d at 1006-07 (affirming district court's denial of coram nobis relief as untimely because the petitioner failed to offer any valid reasons for the delay); United States v. Indelicato, No. CR-85-0078-EMC, 2015 WL 5138565, at *2-3, 5 (N.D. Cal. Sept. 1, 2015) (rejecting petitioner's argument that

he failed to raise claims earlier because he was wrongly advised by lawyers not to bring challenges); <u>Barton v. United States</u>, No. C08-186Z, 2008 WL 11403227, at *1-2 (W.D. Wash. May 14, 2008) (denying coram nobis relief on the sole issue that petitioner had not met his burden to present valid reasons for not attacking the conviction earlier).

In sum, Sittman fails to satisfy the second requirement of coram nobis relief by demonstrating that valid reasons exist for not having attacked his sentence earlier.[2/] Because all four requirements must be met for Sittman to obtain coram nobis relief, Sittman's Petition seeking a writ of coram nobis is DENIED.[3/]

## II. Mootness

"It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" <u>United States v. Juvenile Male</u>, 564 U.S. 932, 936, 131 S. Ct. 2860, 2864 (2011) (quoting <u>Arizonans for Official English</u>

---

[2/] Because Sittman has not met the second requirement to qualify for coram nobis relief, the Court will not address whether he has satisfied the remaining requirements. <u>See</u> <u>Matus-Leva</u>, 287 F.3d at 760 (indicating that all four elements must be satisfied for petitioner to obtain coram nobis relief).

[3/] Because the Court relies on the gatekeeping function of the <u>Hirabayashi</u> factors to hold that Sittman's failure to satisfy the second factor precludes him from obtaining coram nobis relief, the Court will not address whether the equitable doctrine of laches also bars the relief sought. <u>See</u> <u>Riedl</u>, 496 F.3d at 1006-07 (rejecting petitioner's argument that the government had the burden to first establish that it would be prejudiced by the delay because that approach "would largely eviscerate the gate-keeping frame-work <u>Hirabayashi</u> articulated and open the door to inexcusably late claims").

v. Arizona, 520 U.S. 43, 67, 117 S. Ct. 1055 (1997)). During

the litigation, the party seeking relief "must have suffered, or

be threatened with, an actual injury traceable to the defendant

and likely to be redressed by a favorable judicial decision."

Id. (quoting Spencer v. Kemna, 523 U.S. 1, 7, 118 S. Ct. 978

(1998)). "In criminal cases, this requirement means that a

defendant wishing to continue his appeals after the expiration

of his sentence must suffer some 'continuing injury' or

'collateral consequence' sufficient to satisfy Article III."

Id. All this said, the function of coram nobis relief is to

"afford[] a remedy to attack an unconstitutional or unlawful

conviction in cases when the petitioner already has fully served

a sentence." See Telink, Inc. v. United States, 24 F.3d 42, 45

(9th Cir. 1994). Thus, this particular relief necessarily

applies where a defendant's sentence has expired.

Sittman's sentence on the 1992 Conviction has expired

and been served. Thus, Sittman's challenge is moot unless he

can show that a decision invalidating his prior sentence "would

likely redress some collateral consequence."[4/] Juvenile Male,

_____

[4/] This is so notwithstanding 1957 Supreme Court case, Pollard v.
United States, which presumed the existence of collateral consequences even
though the defendant had only challenged the legality of his sentence, not
his conviction. 352 U.S. 354, 358, 77 S. Ct. 481, 484 (1957) ("The
possibility of consequences collateral to the imposition of a sentence is
sufficiently substantial to justify our dealing with the merits."). The
Supreme Court in Spencer later criticized Pollard's presumption of the
existence of collateral consequences to hold that a defendant's parole
revocation did not create sufficient collateral consequences to avoid
(Continued . . . )

564 U.S. at 937, 131 S. Ct. at 2864.  Sittman identifies that

collateral consequence as follows:

> On subsequent conviction case no. (Cr. No. 16-
> 00471-LEK) I was placed in higher criminal
> category.     Then    on    current    probation
> revocation hearing the AUSA referred to my
> being an armed career criminal to influence
> the judge into giving me a lengthy sentence.
> Therefore, there is ongoing collateral damage.

Petition at 1 of 3; see also Reply at 1 of 1 ("Government

Exhibit 7 (43) + 2 points being on probation for

unconstitutional sentence is proof of on going [sic] collateral

consequences.").   There are two major problems with Sittman's

argument.

First, there is no indication that Sittman's sentence

for his conviction in the 2012 Case—much less his sentence for

the supervised release violation in that case—was impacted by

any ACCA designation connected to the 1992 Conviction.  From the

presentence report in the 2012 Case, it appears that Sittman's

sentence was enhanced not under the ACCA, but under the

---

mootness.  523 U.S. at 9-10, 118 S. Ct. at 984 (describing Pollard as "[t]he
gateway to abandonment of [the past] fastidious approach to collateral
consequences").  Still, the Court did not overrule Pollard.  Several years
later, the Supreme Court relied on Spencer—with no mention of Pollard—to note
that, "when a defendant challenges only an expired sentence, no such
presumption [of collateral consequences] applies."  Juvenile Male, 564 U.S.
at 936, 131 S. Ct. at 2864.
    In its Response Brief, the Government acknowledges "Ninth Circuit
authority that suggests that a criminal conviction may presumptively give
rise to an ongoing legal disability sufficient to satisfy the Article III
requirement," but it notes that it is "aware of no authority that would
extend merely to the length of a sentence."  Govt's Resp. Br. at 14 n.2.
Pollard appears to be such authority, yet the Supreme Court has more recently
reversed course, and seemed to require some showing of collateral
consequences beyond just the fact of the conviction and sentence.

mandatory Sentencing Guidelines.[5/]  See Govt's Resp. Br., Ex. 7

at 10; see also Govt's Resp. Br. at 14.  Moreover, contrary to

Sittman's assertion otherwise, the Court sees nothing in the

transcript of the revocation hearing for the 2012 Case to show

that the AUSA characterized Sittman as an Armed Career Criminal

to encourage a lengthier sentence.  See Govt's Resp. Br., Ex. 8;

see also Govt's Resp. Br. at 15.  Accordingly, Sittman has not

established that he continues to suffer collateral consequences

many years after the 1992 Conviction.

Second, Sittman has not shown how the relief he seeks

in his Petition would redress his purported injury.  For one, he

has presented no authority that he would be entitled to credit

for overserved time in the 1992 Conviction such to reduce his

current sentence for revocation of supervised release in the

2012 Case.  It is well established that excess prison time

served cannot be credited to reduce a supervised release term.

Johnson, 529 U.S. at 59, 120 S. Ct. at 1118 ("The objectives of

supervised release would be unfulfilled if excess prison time

---

[5/]  In United States v. Blackstone, the Ninth Circuit concluded that
"Johnson did not recognize a new right applicable to the mandatory Sentencing
Guidelines on collateral review." 903 F.3d 1020, 1028 (9th Cir. 2018).  The
Supreme Court had previously held that advisory guidelines were not
unconstitutionally vague.  See Beckles v. United States, 137 S. Ct. 886, 891
(2017).  Accordingly, Petitioner would not be able to rely on Johnson to
challenge his designations under the Sentencing Guidelines.  See United
States v. Lintott, No. 3:94-cr-00147-HZ, 3:18-cv-01741-HZ, 2019 WL 1757519,
at *3 (D. Or. Apr. 19, 2019) (denying coram nobis relief because the
defendant was sentenced as a career offender under the mandatory Sentencing
guidelines, not under the ACCA).  This may explain why Sittman is relying on
a challenge to his 1992 Conviction to attempt to lessen his sentence stemming
from the 2012 Case.

were to offset and reduce terms of supervised release."); see also United States v. Padayao, Cr. No. 05-00161 HG, Civ. No. 16-cv-00223 HG-KSC, 2016 WL 3566192, at *1 (D. Haw. June 27, 2016) (denying defendant's argument that his term of imprisonment for violating supervised release should be reduced based on a "theory that the time he served for his underlying sentence should be credited to his current term of imprisonment for violations of supervised release"); United States v. Leach, Cr. No. 05-00531 JMS, Civ. No. 16-00124 JMS-RLP, 2016 WL 2344197, at *3 (D. Haw. May 3, 2016) ("If a 'time bank' of overserved time existed for such use, it could easily be abused.  A defendant on supervised release could feel free to violate the terms of supervised release, secure in the knowledge that he could cash in his account if the court revoked his supervised release."). Under that principle, Sittman's term of imprisonment for supervised release in the 2012 Case could not be reduced even if the 2012 sentence were vacated.  The circumstances here, then, present an even stronger case for the Government; if a defendant is not entitled to have his sentence of imprisonment from a supervised release violation reduced where the underlying conviction is invalid, then surely a defendant would not be entitled to the same sentence reduction when the invalid conviction is in a separate case altogether.

Bottom line, Sittman has failed to present any valid legal theory for how a reduction in his sentence on the 1992 Conviction—which he completed decades ago—could impact his sentence for violating supervised release in the 2012 sentence—an entirely unrelated case. This Court simply "does not have the authority to alter [Sittman]'s sentence for violating the terms of his supervised release" and Sittman has not provided any legal basis for "altering his current term of imprisonment for violating the terms of his supervised release." Padayao, 2016 WL 3566192 at *4.

Because the Petition fails to show that a decision invalidating Sittman's sentence in the 1992 Conviction would likely redress some collateral consequence—namely, his time currently being served in the 2012 Case—coram nobis relief is not appropriate. Likewise, in addition to (and largely because of) the timeliness and mootness issues discussed, Sittman has failed to meet his burden to show that any alleged error is one of the most fundamental character to justify the grant of a writ of coram nobis. Accordingly, to the extent that Sittman's Petition seeks a writ of coram nobis, the Petition is DENIED.

## III. Sittman's Additional Challenges

### a. Writ of Audita Querela

The Court notes that Sittman's Petition also purports to seek a writ of audita querela. As the Government points out,

audita querela relief is even more rare than coram nobis relief
and "its use is limited to very narrow circumstances." See
Govt's Resp. Br. at 19-20 (quoting United States v. Fischer, No.
3:01-CR-00263-HA, 2014 WL 5473586, at *3 (D. Or. Oct. 28,
2014)). "Under Ninth Circuit authority, a writ of error audita
querela is not available unless (a) there is a legal objection
to a conviction, which has arisen subsequent to that conviction,
and (b) the legal objection is not redressable pursuant to
another post-conviction remedy such as a § 2255 motion." United
States v. Baptista, No. CR-10-00050-PJH, 2013 WL 4014965, at *4
(N.D. Cal. Aug. 5, 2013) (citing United States v. Valdez-
Pacheco, 237 F.3d 1077, 1080 (9th Cir. 2001); Doe v. I.N.S., 120
F.3d at 204); see also Doe v. I.N.S, 120 F.3d at 204 ("[W]e now
expressly join our sister circuits in holding that a writ of
audita querela, if it survives at all, is available only if a
defendant has a legal defense or discharge to the underlying
judgment." (footnotes omitted)).

Even assuming Sittman has established the second
requirement—that his legal objection is not redressable under
another post-conviction remedy—Sittman cannot be entitled to
audita querela relief when he has failed to show collateral
consequences stemming from his expired 1992 sentence. The
mootness issues and lack of ongoing collateral consequences
discussed above apply equally to bar audita querela relief. See

United States v. Fonseca-Martinez, 36 F.3d 62, 64 (9th Cir. 1994) (describing audita querela as a means of vacating conviction on equitable grounds "to protect defendants from adverse collateral consequences").  Accordingly, to the extent that Sittman's Petition seeks a writ of audita querela, the Petition is DENIED.

**b. Addendum to Coram Nobis Petition**

Sittman filed an "Addendum" to his Petition, ECF No. 207, on November 7, 2019.  In it, he cites in "support of [his] claim that [his] sentence was unconstitutional," a recent Seventh Circuit case, United States v. Franklin, 772 F. App'x 366 (7th Cir. 2019).  Sittman describes the holding as "clearly stat[ing] that prior Wisconsin burglary convictions do not qualify as prior "violent felonies" to support federal sentences under the ACCA."  Addendum at 1 of 1.

Even if Franklin provided some substantive insight on how the ACCA would operate with respect to Sittman's sentence on the 1992 Conviction—which was enhanced based on prior Wisconsin burglary convictions—the case is procedurally distinguishable. As the Government points out, Franklin was a direct appeal, not a coram nobis petition.  Being on direct appeal, the defendants in Franklin—unlike Sittman—were still in custody serving the

challenged sentence at the time of their appeal.[6/]  <u>See</u> Govt's
Resp. Br. at 17.  The difference in the type of relief sought in
<u>Franklin</u> versus this case is also critical because coram nobis
relief is an extraordinary remedy and subject to strict
procedural and substantive requirements.  What this means
practically speaking is that Sittman, unlike the defendants in
<u>Franklin</u>, has the heightened burden of showing an error of the
most fundamental character and presenting reasons for the delay
in asserting his challenge.  <u>Id.</u>

     As discussed throughout this Order, Sittman has failed
to meet these prerequisites.  Accordingly, his addendum's
reliance on <u>Franklin</u> fails to save his Petition.

<b><u>CONCLUSION</u></b>

     For the foregoing reasons, the Court DENIES Sittman's
Writ of Error Coram Nobis and/or Audita Querela, ECF No. 200.

     IT IS SO ORDERED.

     DATED: Honolulu, Hawai`i, January 8, 2020.



                                   Alan C. Kay
                                   Sr. United States District Judge

<u>Sittman v. United States of America</u>, Civ. No. 19-00687 ACK-KJM, Cr. No. 91-
00921 ACK, Order Denying Petitioner's Writ of Error Coram Nobis and/or Audita
Querela.

---

    [6/]  It appears that the defendants in <u>Franklin</u> were originally sentenced
to 15 years imprisonment in or around March 2016.